UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY | ) ) ) ) ) | CIVIL ACTION NO.  4:21-10675-TSH |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| CHRISTIAN BAEZ and YIRA REYES, | ) ) | |
| Defendants. | ) ) | |

ORDER AND MEMORANDUM ON PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT (Docket No. 21)

**February 9, 2022**

**HILLMAN, D.J.**

Plaintiffs Zurich American Insurance Company ("Zurich") and American Guarantee and

Liability Insurance Company ("AGLIC") commenced this action for declaratory relief against

defendants Christian Baez and Yira Reyes.  In an underlying action filed in Massachusetts Superior

Court -- *Yira Reyes v. Christian Baez and Sheehan's Towing, LLC*, Civil Action No. 2077CV1281

-- Reyes alleges that Baez sexually assaulted her.  Baez is currently incarcerated on charges related

to the sexual assault.  At the time of the assault, Baez was employed by Sheehan's Towing, LLC

("Sheehan's Towing"), which had insurance policies issued by Zurich and AGLIC.  Here, Zurich

and AGLIC seek a declaratory judgment stating that they are not obligated to defend and/or

indemnify Baez in the underlying state court action.  Zurich and AGLIC now move for summary

judgment.  For the following reasons, the Court ***grants*** their motion.

**Background**

The following facts are undisputed.  In December 2020, Reyes sued Baez and Sheehan's Towing in Massachusetts Superior Court for statutory and common law claims stemming from a sexual assault that Baez, while working for Sheehan's Towing, had committed against Reyes. Reyes's state court complaint alleges that early in the morning on December 25, 2017, she was involved in a single motor vehicle accident in Methuen, Massachusetts.  Baez, while operating a Sheehan's Towing flatbed tow truck, arrived at the scene.  Baez discovered Reyes to be unconscious or otherwise nonresponsive inside her vehicle.  Baez took Reyes out of her vehicle, placed her in his truck, and drove off.  While driving, Baez attempted, without success, to make Reyes regain consciousness or become responsive.  Baez then drove to a dark, secluded, and isolated area.  While Reyes remained unconscious, Baez removed Reyes's underwear and "penetrated [her] vagina with his fingers, mouth and tongue."  At some point, as he was doing this, Reyes regained consciousness.  She yelled at him to stop and to return her to her vehicle; Baez complied.  When they arrived back at Reyes's vehicle, police were at the scene.  Officers placed Baez under arrest.  Baez ultimately pleaded guilty to charges of kidnapping and rape and was sentenced to six to eight years in prison.  Reyes alleges one count of negligence against Baez.

At the time of the assault, Sheehan's Towing had a Commercial Auto Policy ("Auto Policy") issued by Zurich.  The Auto Policy provided coverage for claims of "bodily injury" caused by an "accident" and "resulting from the ownership, maintenance or use" of a covered "auto."  The tow truck used by Baez on the night of the assault was a covered auto.  The Auto Policy defined "accident" to include "continuous or repeated exposure to the same condition resulting in 'bodily injury.'"  The Auto Policy excluded coverage for bodily injury "expected or intended from the standpoint of the insured."

Sheehan's Towing also had a Commercial General Liability Policy ("CGL Policy") and an Umbrella Policy issued by AGLIC.  The CGL Policy insured "employees" of Sheehan's Town but "only for acts within the scope of their employment."  The Umbrella Policy excluded coverage for "actual, threatened or alleged abuse or molestation by anyone of any person in the care custody or control of any insured."

After Reyes commenced her state court action against Baez and Sheehan's Towing, Zurich declined coverage under the Auto Policy, and AGLIC declined coverage under the CGL Policy and the Umbrella Policy.  Zurich asserted that the Auto Policy did not apply due its exclusion for expected or intended injury.  AGLIC asserted that the CGL Policy did not apply due to, *inter alia*, Baez not being an "insured" under the CGL Policy, and that the Umbrella Policy did not apply due to, *inter alia*, its exclusion for abuse or molestation.

In April 2021, Zurich and AGLIC commenced the instant action against Baez and Reyes for declaratory relief, arguing that, as to the underlying state court action, Zurich is not obligated to defend and/or indemnify Baez under the Auto Policy, AGLIC is not obligated to defend and/or indemnify Baez under the CGL Policy, and AGLIC is not obligated to defend and/or indemnify Baez under the Umbrella Policy.

Baez, who is currently incarcerated, has not answered or otherwise responded to the complaint.  Accordingly, on September 10, 2021, Zurich and AGLIC moved for entry of Baez's default.  Pursuant to Fed. R. Civ. P. 55(a), the Court entered Baez's default on January 25, 2022. Zurich and AGLIC now move for summary judgment.  Reyes opposes the motion as to the Auto Policy.  As to the CGL Policy and the Umbrella Policy, Reyes concedes that they do not apply.[1]

---

[1] Indeed, for the reasons stated by Zurich and AGLIC in their summary judgment materials, the Court grants their requested declaratory relief concerning the CGL Policy and the Umbrella Policy.

**Discussion**

It is "well settled" in Massachusetts that "a liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity." *Doe v. Liberty Mut. Ins. Co.*, 667 N.E.2d 1149, 1151 (Mass. 1996).  If a complaint is "reasonably susceptible" to an interpretation that it states a claim for indemnity, the insurer has a duty to defend. *See Liberty Mut. Ins. Co. v. SCA Services, Inc.*, 588 N.E.2d 1346, 1347 (Mass. 1992).  Massachusetts courts previously have considered insurance policies that, like the Auto Policy here, cover "accidents" but exclude coverage for bodily injury "expected or intended from the standpoint of the insured."  The Massachusetts Supreme Judicial Court ("SJC") has interpreted policies with this language to cover intentional acts of the insured if "the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur." *Quincy Mut. Fire Ins. Co. v. Abernathy*, 469 N.E.2d 797, 799 (Mass. 1984).  An insurer may be entitled to summary judgment if there is no genuine dispute that the insured intended, or knew with substantial certainty, that some injury would occur from his or her actions. *See Liberty Mut. Fire Ins. Co. v. Casey*, 74 N.E.3d 285, 288 (Mass. App. Ct. 2017).

Zurich contends that the Court can infer as a matter of law that Baez intended to cause harm when he sexually assaulted Reyes.  Reyes asserts, in contrast, that the circumstances of this case -- namely, a sexual assault involving an adult victim -- prevent the Court from drawing that inference as a matter of law.  The Court agrees with Zurich.

While questions of a person's intent normally are not amenable to summary judgment, *see Nashua Corp. v. First State Ins. Co.*, 648 N.E.2d 1272, 1276 (Mass. 1995), the SJC has held that in certain contexts an intent to injure can be inferred as a matter of law, *see Hanover Ins. Co. v. Talhouni*, 604 N.E.2d 689, 691 (Mass. 1992).  In *Worcester Ins. Co. v. Fells Acres Day School,*

*Inc.*, 558 N.E.2d 958, 966 (Mass. 1990), a case that dealt with alleged child sexual abuse, for example, the SJC concluded that an "intent to injure may be inferred as a matter of law from the intentional commission of an inherently injurious act such as forcible sexual abuse." The SJC likened "sexual assault" and "rape" to the "act of striking another in the face;" each act is "so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law." *Id.* at 964 (quoting *CNA Ins. Co. v. McGinnis*, 666 S.W.2d 689, 691 (Ark. 1984). In *Doe*, 667 N.E.2d at 1152, the SJC added that in cases of "child molestation or sexual misconduct involving a minor," an "inference of harm does not require forcible rape or sexual intercourse."

Here, although Reyes was not a minor at the time of the assault, Baez's act of penetrating Reyes's vagina with his fingers, mouth, and tongue, while Reyes was unconscious, was so certain to cause a particular kind of harm that an intent to injure can be inferred as a matter of law. Where, as here, a victim is "so impaired as to be incapable of consenting" to sexual intercourse, a perpetrator may be found guilty of rape under Massachusetts law if he used the force necessary to effect penetration. *See Commonwealth v. Blanche*, 880 N.E.2d 736, 745 n.19 (Mass. 2008). Here, not only did Baez plead guilty to rape, but it is alleged that Baez penetrated Reyes's vagina while Reyes was unconscious. The act of rape itself inflicts bodily harm. *See Commonwealth v. McCourt*, 781 N.E.2d 808, 815 (Mass. 2003).

Reyes denies that Baez intended to injure her. She argues that his lack of intent can be inferred from his statements to police following the assault that he "didn't mean for it to go that far," and that he "wasn't thinking." Baez may have acted impulsively in committing the assault, but as made clear by *Fells Acres*, 558 N.E.2d at 964, sexual assault and rape are inherently injurious. As soon as Baez initiated the sexual assault, some degree of harm was certain. *See City*

*of Newton v. Kransigor*, 536 N.E.2d 1078, 1081 (Mass. 1989) (what matters is the type of harm inflicted, not the extent of harm sustained).  Indeed, this case is unlike *Abernathy*, 469 N.E.2d at 798, where an insured person threw a piece of asphalt at a vehicle, injuring two people inside the vehicle.  While throwing an object at a vehicle will not necessarily injure the vehicle's occupants, *see id.* at 801-02, an act of sexual assault or rape necessarily will.[2]

*Marculetiu v. Safety Ins. Co.*, 157 N.E.3d 644 (Mass. App. Ct. 2020), is not to the contrary. There, an adult ballet dancer alleged that her instructor had sexually assaulted her while at an international competition.  *See id.* at 648.  In concluding that an intent to injure could not be inferred as a matter of law, the court noted that the dancer could "make out a claim of sexual harassment *without* alleging that [the instructor's] actions amounted to rape or other forms of intentional sexual assault."  *Id.* at 654. (emphasis added).  The court reasoned that sexual harassment could occur in the absence of an intent to injure, and the court distinguished *Fells Acres* and *Doe* as involving "the intentional sexual abuse of children," not establishing a "sweeping rule that an insured who engaged in some form of volitational 'sexual misconduct' with another adult necessarily must have intended to injure that person."  *Id.* at 654-56.

As is clear, *Marculetiu* not only distinguishes adults from children, but sexual assault from sexual harassment.  Here, as to that second distinction, there is no suggestion that Baez's actions fell anywhere short of sexual assault.  While the victim's age may matter where the alleged conduct is not necessarily sexual assault, *compare Doe*, 667 N.E.2d at 1152 (intent to injure inferred as a matter of law where adult perpetrator engaged in unlawful sexual contact, but not necessarily rape,

---

[2] Reyes also asserts that because she was unconscious as Baez began to assault her, it is reasonable to infer that he believed she would remain unconscious for the entire assault and not be harmed.  Reyes provides no support, however, for the proposition that harm from a sexual assault derives exclusively from the victim knowing that the assault occurred.  Again, the SJC has explained that sexual assault and rape are inherently injurious.  See *Fells Acres*, 558 N.E.2d at 964.

with child victim) *with Marculetiu*, 157 N.E.3d at 654 (intent to injure not inferred as a matter of law where adult perpetrator engaged in sexual misconduct with adult victim), here, the alleged conduct is nothing short of sexual assault.  Thus, *Fells Acres*, 558 N.E.2d at 964-65, which describes sexual assault as inherently injurious, governs.

Accordingly, based on the undisputed fact that Baez sexually assaulted Reyes, the Court infers as a matter of law that Baez intended to injure Reyes.  Therefore, the Auto Policy's exclusion of coverage for bodily injury expected or intended from the standpoint of the insured applies, and Zurich is entitled to a declaratory judgment stating that it is not obligated to defend and/or indemnify Baez in the underlying state court action.

### Conclusion

For the reasons stated, the Court grants summary judgment in favor of Zurich and AGLIC. A declaratory judgment shall enter, stating:

AGLIC is not obligated to defend and/or indemnify Baez under the CGL Policy with respect to Yira Reyes v. Christian Baez and Sheehan's Towing, LLC, Civil Action No. 2077CV1281.

Zurich is not obligated to defend and/or indemnify Baez under the Auto Policy with respect to Yira Reyes v. Christian Baez and Sheehan's Towing, LLC, Civil Action No. 2077CV1281.

AGLIC is not obligated to defend and/or indemnify Baez under the Umbrella Policy with respect to Yira Reyes v. Christian Baez and Sheehan's Towing, LLC, Civil Action No. 2077CV1281.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**